Mr. Curry, we'll hear from you. May it please the Court. Your Honor, I'm Steve Curry. I'm here appearing on behalf of the appellant, Mr. Calvin Kirkland. Mr. Kirkland's complaint in its, well, in total, was dismissed by the District Court on summary judgment, and we're here on appeal contesting that dismissal for several issues or reasons. The parties have all submitted their briefs. I think the record has been discussed in those. My first point I wanted to address with the Court is that we feel that the District Court erred in striking material portions of Mr. Kirkland's statement of undisputed facts, which were filed pursuant to Local Rule 56.1. The Local Rule requires that the moving party for summary judgment submit a listing of what it contends are undisputed facts. The opposing party then responds to that and has the option to also submit additional facts that it contends are at issue for trial. Mr. Kirkland did that. A Jocelyn paper filed 90 separate statements of what it contended were undisputed facts. Mr. Kirkland's response addressed those 90 and also submitted 26 additional affirmative representations of record evidence establishing that facts did exist. The trial court, in reviewing that, and it's addressed at Appellate's Brief, pages 13 through 23, the trial court basically gutted Mr. Kirkland's claims as it related to the material facts that he contended supported his charge. For example, Mr. Kirkland claimed that he had contacted, during the course of his employment, the Cleveland office of Jocelyn. The Little Rock office was where he worked. He contracted management at Cleveland to express his objections to the treatment. The trial court at Item 107 struck that assertion, claiming that it was too speculative. Jocelyn had submitted an argument of economic downsizing in which it continued. That was the reason it laid off Mr. Kirkland. Mr. Kirkland cited the testimony of Mr. Mondock, who was his supervisor, in support of the fact that nobody else seemed to be bothered by the economic downsizing issue. Nobody else was laid off for that reason, and in fact, Jocelyn's business had increased at the site. The trial court struck those items, Items 23 to 26. There was some testimony about Mr. Kirkland couldn't be brought back because there weren't available vehicles. Mr. Kirkland, in Item 31, had disputed that with Mr. Mondock's testimony, indicating that they had a fleet of vehicles they could lease from. There was also testimony stricken from the record on Item 44 and 45, and then Mr. Kirkland's affirmative representations at Item 111, where there was a meeting in which Mr. Mondock told him that, Calvin, I know you've been hurt on the job, and he had a work-related injury. We're going to let you go home and recover from that. Mr. Kirkland says, and I cited the specific testimony, that he was told, go home and recover, and you can come back to work. And that was, again, coming from Mr. Mondock. There was also a component of this case dealing with hostile race environment within the workplace. Mr. Kirkland testified about statements of co-workers, statements made in the workplace that he considered to be offensive and racially and age-related discrimination. The trial court struck Items 74 through 77 and Items 102, 103, 105, 106, saying that these were legal characterizations and conclusions and not assertions of fact. We contend that when the trial court or the district court struck those parts of the statement of disputed facts, it, again, crippled Mr. Kirkland's ability to assert those facts in response to the issues pending in the summary judgment. And, again, the layoff and the recall itself, the judge struck Items 48 through 50 and Items 111, finding that it was inconsistent with deposition testimony and that it was non-responsive, citing no record evidence. Again, on summary judgment, as this court has held, the issue is not to have the district court determining credibility and who to believe or not to believe. Those are the functions of a jury at trial. Because of that, we contend that the trial court erred. We have cited the Jenkins v. Winter case and also the Wright v. Southern Arkansas Regional Health case for the proposition that the district court should not strike responsive portions of the opposing party's statement of undisputed facts because it's just clearly unwarranted in this case. That's the first issue I wanted to address. Well, those are very fact-intensive. We'd have to go through each one. But she does say in some cases you were relying on hearsay. Do you agree that hearsay is not properly considered? No, Your Honor. Because the hearsay the district court was relying on are statements made by coworkers in the workplace. And this court has said for summary judgment purposes under Rule 801, Rules of Evidence, that those statements may be admissible or may be admissible at trial to defeat either summary judgment or to present plaintiff's case in the presence of a jury. What part of Rule 801? How do they come in as non-hearsay? Your Honor, 801d-2d is the section that we relied on. You'll have to remind me. What is the substance of that? I think it's... You're asking me to go back to law school here. No, I'm just asking you to explain this case. I think that it is a rule that creates exceptions to the hearsay rule, and it allows for exception analysis for statements made by coworkers in the workplace. I don't think there's any coworker. There's a co-conspirator exception. Well, not a co-conspirator. I think that's d-2e. These would be agents or employees of the defendant was a position that we've taken in this case. You're saying it's an admission by the defendant maybe because they're agents of the defendant? It would be an exception to the hearsay rule, Your Honor, because it occurred in the workplace and it was made by employees of the defendant. 801d-2d? d-2d. Yeah. The statement is offered against the opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed. So you're saying some of these things were statements made by coworkers who were an agent or employee of the defendant, huh? Yes, Your Honor. Specifically, Mr. Gillyard was an employee of the defendant, of Joshen, who made the racially charged statements that he was going to Atlanta to get, and I can't remember, I'll paraphrase, was going to shoot some people up and was going to boycott, and Mr. Kirkland, in his statement, in his deposition, said that he viewed that as racially motivated under both what this court has said would be the objective and the subjective standard. You've got to look at it on its face and also what the listener heard when those statements were being made in the workplace. Those statements were then reported to Mr. Mondock and also part of the report that Mr. Kirkland made to the Cleveland office. All right. Well, tell us, assuming you get in all the evidence that you think should have been considered, why do you make a submissible case? Well, I think first we have to get past the district court's dismissal based upon the statute of limitations. She contended in the ruling that the EEOC charge was untimely, therefore the untimeliness would bar any subsequently filed lawsuit. We can test that, and in our brief on pages 23 through 27, there's two issues. There's no doubt that the charge was filed on March the 12th of 2014. In that charge, Mr. Kirkland relates that he was laid off by Mr. Mondock. Mr. Mondock called him in. Calvin, we're going to let you go home, get over your illness, come back. That was July the 29th of 2013, so there's no doubt that the March 12, 2014 date would have been outside of the 180 days. We contend that under this court's rulings that the doctrines of equitable tolling or that the doctrine of equitable estoppel would delay the accrual date for the filing of the- Which one are you relying on? I would like to say both. Under this court's decision in Dream, which is cited in the briefs, equitable tolling is going to apply when the claimant, through no fault of his own, is ignorant of his claim. In reviewing that evidence, you look at what the reasonable person would do, and it's sometimes been referred to as excusable ignorance. There's no requirement under equitable- How would that apply here? Your man knew what had happened. He knew he had been told to go home and get well and come back. He didn't know that he was going to be replaced by other white and younger employees after he was laid off. He had been told and assured and lulled into the belief that go home, get well, and you can come back. And that's where the tolling, I think, would occur. Through no fault of his own, he's going by what his supervisor tells him to do. He doesn't file a charge of discrimination with the EEOC at that time Nobody had been called back to replace him that would fall in the non-protected categories. You're really saying the facts didn't even happen until a later date? I don't think it occurred- Aren't you really saying that the replacements weren't brought in until later, or were they brought in at the same time that he was sent home? No, they were brought in later, and he was advised of this action by employees of Joshen at a gas station. In other words, he wasn't going back to the work site to be able to observe or to see that other workers were being brought in to replace him. And he had been told by Mr. Mondock that go home, get over your injury, and he's been a Bob truck driver for a long time. Mr. Kirkland was a good employee. There's no allegation that he couldn't do his job or wasn't capable. So he took his supervisor at his word and did just what he was told to do. And I think because of that, the equitable tolling would apply. If you get to the equitable estoppel, you've got to show that under this court's reasoning that the employer did something either deceitfully or to conceal the fact, kind of under a fraud analysis, to conceal the fact that the real reason he was being laid off was because they wanted to bring in younger or white employees. And we would also contend on the retaliation charge, it was because of the fact that he also had called the Cleveland office to report the claims of racially charged statements in the workplace, which this court has said is protected activity under retaliation analysis. But under estoppel, again— We're running out of time here. Do you want to speak to the merits at all or do you want to save what's left for rebuttal? I think I'll save that for rebuttal, Your Honor. I've got a— I don't know if it's going to be proper rebuttal if you haven't argued it in the opening. Well, I'll go ahead and address the merits. It's our position that we never got to the merits because the court dismissed the case. We know that. And because of that, if the court had looked at the merits— No, I mean she said alternatively she would grant somebody judgment on the merits. That's what I mean by the merits. Right. Mr. Kirkland was a longtime employee, again had been accused of no wrongdoing or anything. He basically was told to go home. They then started bringing in quite younger employees to do what he had been doing, which is driving the bob truck. Now, Joshen contends that they were driving bob trucks and semis. Some of them were. Some of them were also just driving the bob trucks. And they've offered no reason why Mr. Kirkland would not have been qualified to come back. They argue he didn't file an application for reemployment. Mr. Mondock did not tell him to file an application. There was no expectation that he apply for that job. That job was there and everybody knew what it was. All he was told is get well or you can do your job and you can come back. And that's on the merits. We addressed it in the briefs, but that's our position on that. All right. Thank you, Mr. Kirkland. My time is now expired. You have one second left, but we'll count it as expired under the de minimis rule. All right, Mr. Help me out here. Metazotigan. Mr. Metazotigan, you may proceed when ready. May it please the court, my name is Abt Metazotigan. I have the pleasure of representing the appellee this morning, Joshen Paper and Packaging of Arkansas. There are ten issues on appeal. I will try to make your work a little easier. I would submit that this case from the 49-page opinion and order below is like a make-your-own-adventure book with one conclusion, which is affirming the lower court. The three categories that these ten issues on appeal fall into. The first category addresses the second issue that Mr. Curry raised, and it deals with the exhaustion of administrative remedies and the untimeliness of the charges. The second issue goes to the merits of the charge, and primarily the issue of never submitting an application, never meeting a prima facie case. And the third issue, the third category of issues on appeal relate to the motion of strike, and I'll reserve that for the end. To correct a few points before I begin, two paragraphs that appellant has alleged were stricken in error from the motion of strike, 44 and 74, were never stricken. If you read Judge Baker's order, that just did not happen. Secondly, as to the issue of whether or not Mr. Kirkland should have known to submit an application or reapply, he was never promised he'd be returned to work. He was told that his unemployment would not be contested and that he was not being terminated for cause and he was being laid off. So those are two corrections to the record. On the issue of untimeliness, the first category of issues on appeal, the court's analysis begins with a review of the charge itself, which of course must have been filed within 180 days of an adverse employment action. On the charge itself, there are three important dates to keep in mind. July 29, 2013, the date Mr. Kirkland was laid off. December 5, 2013, the date listed on the charge is both the first and last day of alleged discrimination. And then March 12, 2014, the date that the charge was actually filed. And looking at the charge itself, there's only one claim and one claim only alleged in that charge, and that claim is a failure to rehire claim. So the first very easy task, I believe, for this panel is to address all of these superfluous claims that relate to conduct that occurred while Mr. Kirkland was employed. So everything that occurred prior to July 29, 2013. All of that conduct is untimely. There's no continuing violation theory or any applicable law that would support the timeliness there, and even to accept a continuing violation theory. At some point, a continuing violation does end. It does not continue into perpetuity. It's contrary to what Congress intended with Title VII's remedial and administrative provisions. So the terminal date, even if there was ever a continuing violation in this case, the terminal date there is July 29, 2013. The second item is to equitable tolling. That issue was never raised below, and that's addressed in Judge Baker's order. As to equitable estoppel, there's no allegation of any positive misconduct, any positive misconduct by the appellee, Joshua Paper, to have prevented Mr. Kirkland from understanding that his claim had arisen. You confused me a little bit on equitable tolling. You said it wasn't raised below, and then I thought you said that Judge Baker dealt with it or not. It was not ever alleged. So in her opinion and order, she says there are two types of possibilities to kind of revive an otherwise still claim. The first would be equitable tolling, which was never raised. That's what she said? Yes. It was never? Yes, Your Honor. And the second would be equitable estoppel, which was raised but is not available here. Counsel, you do agree that the failure to rehire claim was administratively exhausted?  So reviewing the charge on the four corners itself would put it within the ambit of time between September 16 through March 12. During Mr. Kirkland's deposition, we asked what happened on December 5. He says absolutely nothing happened. I'm paraphrasing. He says nothing happened. That's a date generated by the EEOC. And the EEOC, in fact, advised Mr. Kirkland that his other claims were untimely. And that actually comports with the record evidence here. The record evidence shows that there were actually no driving positions available at Josh and Paper until December 30, and that that position was not filled until January 14. And in this court's opinion from Shelton v. Boeing, under a very similar fact pattern, an individual had applied ten times for a position up to June 25, 2001. Nothing in the charge, and that's what was alleged in the charge, nothing in the charge alleged anything or dealt with any failure to rehire claims for anything that occurred after June 25, 2001, which is what was raised in the complaint, which is essentially what occurred here. There's no position to even hire him into, and he alleges that nothing happened to him on December 5. So we would submit that he has retroactively rendered the charge incomplete or otherwise unexhausted. You mean by relying on December 5 as the date? By admitting that nothing happened on December 5, that that date was just simply incorrect and supplied by the EEOC. He does have some statements, though, in the charge, I think, to the effect that other whites were hired to in similar positions, doesn't he? He does, Your Honor. The times don't seem to be specified. At least I don't recall that. The times in the charge itself are not specified. And even if you go to the intake questionnaire, they're not specified as well. But the record evidence, the evidence here, identifies that that's simply untrue, that there were no positions hired or filled until January 12, 2014. So he can specify that. He can allege that. And that really kind of leads to the merit-based argument. I think the failure to rehire claim is easiest to be dealt with on the merits, again, because there's no application ever submitted. On the untimeliness issues, I believe every single claim, I believe all claims can be addressed on exhaustion and untimeliness alone. If the only claim that could survive, which ostensibly survived, would be the failure to rehire claim, that claim is dealt with on the merits. Mr. Kirkland, and that leads to the second category of items on appeal. As the lower court found, Mr. Kirkland did not make out a prima facie case of discrimination under the ADEA or under Title VII. He never submitted an application. He never contacted Josh and Paper to advise that he was interested in returning to work. Accepting his position, he alleges that Mr. Mondock, his manager, told him to go home and heal and come back when he's ready. Well, he never contacted Mr. Mondock ever, actually. Mr. Mondock reached out to him after the charge was filed and made an unequivocal offer of reemployment, offering him the only position that was available. Mr. Kirkland never responded, so Mr. Mondock followed up again a few days later. Mr. Kirkland did not respond to that. You agree that a formal application was not necessary, just some expression of interest? Any expression of interest. None of that happened here. None of that happened here. So there's really no adverse employment action, which makes following the entire McDonnell-Douglas analysis very difficult to comply with. Our legitimate, non-discriminatory reason for not rehiring him is because he never applied, never told us he wanted to come back. And, in fact, he consistently told us throughout the course of his employment that he did not want to drive an 18-wheeler route or any route that required overnight travel. He actually, I believe in his deposition, said he wouldn't do that for his mother, to drive an 18-wheeler. And so that was something we consistently knew. He filed the charge. We said, okay, well, we didn't know that you wanted that position. The position became available. We called and offered him the position, and he did not take it. So our reasonable, legitimate, non-discriminatory reason here is that he never applied, and we didn't believe that he ever wanted that position.  He just said that the company brought some people in to drive Bobcats only, and that was the job he wanted. Yes, Your Honor. What's the record on that? The record on that is, like the record on a lot of Mr. Kirkland's factual allegations, it's simply not true. The fleet of vehicles, it's not that we had access to lease every single vehicle we wanted. We had a fleet of vehicles. Within that fleet, there are entirely two Bob trucks. One prior to Mr. Kirkland's termination that he operated, and one that was operated by another African-American gentleman who was older than Mr. Kirkland. After his termination and continuing throughout the relevant time period, Mr. Hubbard continued to operate that Bob truck exclusively. The remaining Bob truck began to be used by every other driver in the fleet as basically for a floating-type position. That's relevant here, and the factual background here involves the fact that Mr. Kirkland ultimately went to a part-time position because he sued one of Josh and Paper's customers in a personal injury action. That customer barred Mr. Kirkland from ever entering their property. He and Mr. Kirkland had several of those locations on his initial route prior to his lawsuit. So he was not allowed to go back to those places. Mr. Mondock's affidavit testimony makes clear that Bob trucks are typically less reliable for long hauls, and so they're really only used for pretty much local deliveries. The majority of the local deliveries were already foreclosed to Mr. Kirkland. He was not allowed to take those routes because he was barred by the customer, not for any racial reason or not for any age-related reason, but because he sued that customer, and they did not want him to return to their location. Did I answer your question? So on the merits, we submit that Mr. Kirkland did not establish a prima facie case, that even if he could ostensibly be said to have established a prima facie case, we established our reasonable, legitimate, non-discriminatory reason. And then as to the pretext arguments, which is a rigorous standard at the pretext stage, and even a more rigorous standard for ADA purposes under GROSS, which requires not only proof that the employer's reason was untrue, but also that age was the but-for cause of that adverse action. And so at the pretext stage, the comparator evidence that he has provided, and I can go through the individuals, it's quite factual. If the court would like to entertain that, I can go through that. But the evidence does not show that anyone was driving a Bob truck, or anyone that was ever actually returned to drive a Bob truck. So Mr. Kirkland fails on the merits as well. Then the last item that I'd like to turn to is the motion to strike. The court below did not grant in its entirety appellant's motion to strike, or I'm sorry, appellee's motion to strike. And to the extent that Mr. Curry's argument could be said to have resulted in the court below taking the facts not in light most favorable to Mr. Kirkland, that's simply untrue. And that's confirmed 11 times, 11 times in Judge Baker's order. On the motion to strike, there are several reasons why Judge Baker granted them. And like Mr. Curry said, Local Rule 56.1 does require a separate statement setting forth the factual background either supporting or disputing the moving party's positions. Several of Mr. Kirkland's citations were simply erroneous or incorrect. And I can give you an example. On page, I believe, 547 of the appendix, Mr. Kirkland cites to deposition page 107 from Mr. Mondock's deposition. Cover to cover, that deposition was 95 pages long, so that page does not exist. The lower court's not required, nor is this court required, to scour the record. I believe the issue of misleading citations here is particularly pertinent. And this is set out in footnote 1 of appellee's brief. There are several citations in the briefs, in the appellant's initial brief and the reply brief, where he makes several sweeping assertions that are either unsupported or otherwise misleading. And that's, again, confirmed by the fact that Mr. Kirkland alleges that there was error in striking paragraphs 34, 44, and 74, which did not happen. Those are requests that we made for the court to strike those paragraphs, but the court did not grant those requests. As for several other, there are several paragraphs that she struck because they had no record citation, which is a requirement of Rule 56C to have record citations supporting your factual statements. Several were not admissible at trial. Well, in going to the Rule 801 issue, these were not statements made by agents of the employer. These were statements made by Mr. Kirkland himself, saying what he thought someone said, or what he said someone said. So it's a very classic hearsay. So 801 would not apply there anyway, but even if, let's just take... Say that again, they were not statements... These were statements made by Mr. Kirkland as to what someone told him. Right, but wasn't he saying that some employee told him something? Yes. So he's saying the statement of the employee comes in under 801. And that gets to my later point, that the statements were not by agents within the course of employment, not authorized to speak. These were statements by co-drivers about what was occurring as far as the employment practices. And there's no allegation or any evidence in this record suggesting that Mr. Hubbard, who is the person who was alleged to have provided Mr. Kirkland with information, ever actually made those statements, nor that he was making those statements, if he made them, within the course of employment as an agent of Josh and Paper. It's not like a car accident where a truck driver gets out and says, oh my gosh, I'm so sorry. And that statement could be used against the employer, or the employer in that circumstance. This is not within the course of employment whatsoever. Mr. Hubbard is a driver, not a member of HR, not a member of management, not someone with the agency to discuss or describe or make statements on behalf of the company as to what the employment practices were. I see my time is ending. Have I answered your questions? Thank you for your argument. I appreciate the time. Thank you. I think your time had expired, Mr. Curry. So the case is submitted, and the court will file an opinion in due course. Thank you both for your presentations today.